1999 SD 136

**Robert W. DOOLEY, Plaintiff
and Appellant,**

v.

**Dora DOOLEY, Defendant
and Appellee.**

**No. 20732.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Decided Oct. 20, 1999.

James R. Haar, Tripp, South Dakota, for plaintiff and appellant.

Shane D. Buntrock of Johnson, Heidepriem, Miner, Marlow & Janklow, Yankton, South Dakota, for defendant and appellee.

PER CURIAM.

[¶ 1.] Dora Dooley (Wife) was granted a divorce from Robert W. Dooley (Husband) on the grounds of extreme mental cruelty. SDCL 25–4–2(2); SDCL 25–4–4. Wife was granted $1500 per month alimony until she dies or remarries, as well as $6,422.64 in attorney fees. Husband appeals. We affirm, in part, and reverse and remand, in part.

## FACTS

[¶ 2.] Husband and Wife married in Tijuana, Mexico in 1973. In order to allow Wife to immigrate and become a United States citizen, they remarried in California in 1976. At the time of their 1973 marriage, Wife had two small children from a prior marriage. During the course of their marriage, Husband and Wife had two sons. At the time of the divorce proceedings all four children were adults.

[¶ 3.] Wife quit school in the seventh or eighth grade in order to help her mother. Throughout her twenty-four year marriage with Husband it was a financial necessity for Wife to work all but the last year. Her lack of education and lack of full command of the English language relegated her to low paying clerical or manual labor jobs. From 1984 through 1995 she worked the 3 to 11 p.m. second shift at CR Industries in Springfield. The job was a heavy, physically demanding job that was "no fun, believe me," but in 1994, at the height of her earning capacity, it allowed her to earn $18,672. During the pendency of the divorce proceedings, Wife, now fifty years old, was only able to obtain a part-time sales associate position at WalMart, earning $6.00 per hour.

[¶ 4.] Husband, now forty-six years old, is a high school graduate who obtained post high school law enforcement training. He served in the Marines for six years and the Army National Guard for two before entering the law enforcement field. The family moved to South Dakota in 1984. Eleven years later, in August 1995, Husband became the warden at the Springfield Correctional Facility and experienced a substantial pay raise resulting in a $59,200 salary at the time of trial. Because of Husband's substantial raise, Wife claims that he told her that she could finally quit working. While admitting that they no

longer required Wife's income, Husband claims that he did not encourage her to quit her job.

[¶ 5.] The marriage encountered its share of problems. In 1983, Husband admits he had an affair and left wife to support and care for four children alone for six months. The parties did reconcile. Wife, however, believed that Husband continued to be unfaithful but claimed that she never accused him of this or argued about it. Husband claimed he was faithful and described a life of bickering and loss of friends due to Wife's belief that he was intimate with any female with which he had casual contact.

[¶ 6.] Two years prior to Husband's initiation of this divorce proceeding, Wife moved out of the marital bedroom. She said that she did so because she did not want to disturb his sleep since she arrived home at 11:30 p.m. after work, he snored, and she did not like a waterbed. Husband said Wife moved out because she did not want to touch him.

[¶ 7.] During these two years, Husband claimed the parties had no sex. Wife claimed that they had intercourse the night before Husband moved out of the house on November 29, 1996. For the three weekends prior to his leaving, Husband was not home and did not tell Wife where he was.

[¶ 8.] Husband sought a divorce on December 6, 1996 on the grounds of irreconcilable differences. Wife counterclaimed on the basis of mental cruelty. Ultimately, Wife was granted the divorce. The parties agreed to a property settlement which the trial court found equitable and incorporated in the decree. Wife was awarded alimony as well as attorney fees. Husband appeals.

## ISSUE ONE

[¶ 9.] **Did the trial court abuse its discretion in awarding Wife a divorce on her counterclaim of mental cruelty?**

[¶ 10.] "Extreme cruelty is the infliction of grievous bodily injury or griev-

ous mental suffering upon the other, by one party to the marriage." SDCL 25–4–4. In a marital setting, its definition differs according to the personalities of the parties involved. *Schaack v. Schaack*, 414 N.W.2d 818 (S.D.1987).

[¶ 11.] Wife testified that Husband had "been cheating on me all his life." Prior to Husband moving out, the anxiety that this caused forced her to obtain psychological counseling since she was so worried that she could not eat or sleep.

[¶ 12.] Husband testified that he had been faithful to Wife since they reconciled in the mid–1980s. He claimed his relationship was innocent with the woman at whose apartment his car was often seen. He would drop by in the morning for coffee and they would discuss their mutual marital woes. In the evening, they pursued their interest in painting ceramics.

[¶ 13.] When the findings of the trial court regarding claims of extreme mental cruelty are based on conflicting testimony, this Court will not disturb them on appeal. *Pellegrin v. Pellegrin*, 1998 SD 19, 574 N.W.2d 644. Consequently, it cannot be said that the trial court was clearly erroneous in finding that Husband's actions constituted extreme cruelty. *See Pellegrin*, 1998 SD 19 at ¶ 13, 574 N.W.2d at 647.

## ISSUE TWO

[¶ 14.] **Did the trial court abuse its discretion in awarding Wife alimony of $1500 per month until she dies or remarries?**

[¶ 15.] In her answer and counterclaim Wife requested an award of alimony from Husband. In response to the trial court's request in its order for divorce trial, she specified that she was seeking $1500 per month for three years in rehabilitative alimony and $1500 per month for life or until her remarriage in "basic" alimony. Wife

presented no evidence of any educational need or plan of action to support an award of rehabilitative alimony and the trial court awarded none. *Urban v. Urban,* 1998 SD 29, 576 N.W.2d 873. The issue we are presented with, then, is whether the trial court abused its discretion in awarding Wife $1500 per month in alimony until she dies or remarries.

[¶ 16.] SDCL 25–4–41 secures the trial court's discretion for awarding alimony:

Where a divorce is granted, the court may compel one party to make such suitable allowance to the other party for support during the life of that other party or for a shorter period, as the court may deem just, having regard to the circumstances of the parties represented; and the court may from time to time modify its orders in these respects.

[¶ 17.] "In awarding alimony, the trial court, though it has broad discretion, must rest its decision upon several factors *as they appear material to the facts and circumstances of each specific case.*" *Straub v. Straub,* 381 N.W.2d 260, 261 (S.D.1986)(emphasis added). These factors are 1) the length of the marriage, 2) the parties' respective ages and health, 3) the earning capacity of each party, 4) the financial condition of each party after the property division, 5) the parties' station in life or social standing, and 6) the relative fault in the termination of the marriage. *DeVries v. DeVries,* 519 N.W.2d 73 (S.D. 1994).

[¶ 18.] In reviewing these factors, this case reveals that this was a lengthy marriage that lasted twenty-four years. Husband is forty-six years old while wife is fifty years old. Both are in good health, although the strain of Husband's behavior combined with the stress of divorce proceedings has caused Wife anxiety and related physical symptoms. Fault for the termination of the marriage rests with Husband.

[¶ 19.] Husband is a prison warden; Wife is now a part-time WalMart sales associate who has never had the ability to rise above clerical or manual labor jobs. In the three years prior to the divorce trial, Husband earned $28,305, $35,151 and $47,342 while Wife earned $18,672.32, $14,-637.32 and $594.92. At the time of trial, Husband was earning $59,200 while Wife had only been able to obtain a part-time position at $6.00 per hour. The trial court found, however, that she was capable of earning a monthly net income of $1,161.25 while Husband's net income was $3,088.28. Husband's earning capacity is clearly far greater than that of Wife.

[¶ 20.] The parties agreed to a property settlement. Wife's share consists primarily of non-income earning assets while Husband received his ever-increasing retirement account. Husband argues that this settlement has placed him in a difficult financial position because of the debt he agreed to assume and what he owes Wife in cash. These are not people of great financial means. Their net worth is approximately $75,000—not including the house which has not been either appraised or sold. Of this, approximately $60,000 was Husband's growing retirement account which he wanted to keep intact for himself. Consequently, the parties agreed to a property settlement which allowed husband's exclusive retention of his retirement account. Husband neither claims fraud nor argues the property settlement should be somehow voided. *See Jeffries v. Jeffries,* 434 N.W.2d 585 (S.D.1989). In addition, much of the debt that he agreed to assume in the property division will be greatly reduced in a short while when credit card balances are paid and eliminated when the house sells.

[¶ 21.] The trial court's extensive findings of fact and conclusions of law clearly indicate that it considered each factor in awarding alimony. An award of alimony will not be set aside unless it clearly appears that the trial court abused its discretion. *Bell v. Bell,* 499 N.W.2d 145

(S.D.1993). There is no showing of an abuse of discretion in this case.*

## ISSUE THREE

[¶ 22.] **Did the trial court abuse its discretion by awarding wife $6,422.64 in attorney fees?**

[¶ 23.] The trial court concluded:

That considering the relative financial condition of the parties, the relative faults of the parties and [sic] prolonging litigation, the complexity of the issues, the fact that briefs were required, the Court determines and concludes that [Wife] is entitled to recover her attorneys' fees in the amount of $6,422.64 and that [Husband] shall pay this amount.

[¶ 24.] The allowance of attorney fees in domestic relations cases is within the sound discretion of the trial court. *DeVries*, 519 N.W.2d at 78. Its decision will not be reversed absent a showing of a clear abuse of discretion. *Id.*

In determining whether to award attorney fees, a trial court must first consider what constitutes a reasonable fee. *Prentice v. Prentice*, 322 N.W.2d 880 (S.D.1982). On review, this Court will examine the trial court's analysis of the following elements pertinent to fixing legal fees generally: (1) the amount and value of the property involved; (2) the intricacy and importance of litigation; (3) the labor and time involved; (4) the skill required to draft pleadings and try the case; (5) the discovery procedures utilized; (6) the existence of complicated legal problems; (7) the time required; (8) whether briefs were required; and (9) whether an appeal to this court is involved. *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979); *Holforty v. Holforty*, 272 N.W.2d 810 (S.D.1978). Each case must rest on its own facts and there is little to

be gained by comparing the present fee with others which have been previously allowed. *Lien, supra.*

Larry admits that the trial court made a determination as to what constitutes a reasonable fee and does not contest that determination. Also, we find that the fact Larry incurred similar amount of attorney fees lends support that the attorney fees were reasonable. *See also Paul v. Paul*, 616 P.2d 707 (Wyo.1980). Second, the court must decide what portion of the fee, if any, should be allowed as costs to be paid by the opposing party. In reaching this decision the court should consider the property owned by each party, their relative incomes, whether the property of the parties is in fixed or liquid assets, and whether the actions of either party unreasonably increased the time spent on the case. *Kier v. Kier*, 454 N.W.2d 544 (S.D.1990).

*Kappenman v. Kappenman*, 522 N.W.2d 199, 204 (S.D.1994).

[¶ 25.] While a review of the trial court's findings of fact and conclusions of law reveals the court considered the relevant factors and did not abuse its discretion in awarding attorney fees to Wife, a question does arise as to whether the amount of fees so awarded is reasonable.

[¶ 26.] Wife's attorney's fee statement reveals that between November 5, 1997 and November 24, 1997 her attorney spent 19.5 hours on the case for a total fee of $2,437.50. The bill is itemized. In addition, during roughly this same period, he expended $197.25 in costs and with sales tax the total bill was $2,781.00. The bill also reflects a previous balance of $3,641.64 for a total balance due of $6,422.64. This is the amount of attorney fees the trial court awarded to Wife. There is no itemization of what the previous bal-

---

* We do note, however, that while alimony may be awarded during the life of a party or for a shorter period, it can also be modified when circumstances change. SDCL 25–4–41, *Saxvik v. Saxvik*, 1996 SD 18, 544 N.W.2d 177 (complete termination of $1500 monthly permanent alimony was an abuse of discretion while incremental reduction was appropriate under facts of the case).

ance was for or the time frame it was accumulated. This compares with husband's itemized attorney's fee bill which shows between commencement of the case, December 2, 1996, and the end of trial December 10, 1997, the fee was $3,732.92.

[¶ 27.] Without any itemization or time frame for $3,641.64 of Wife's attorney's fees the trial court did not have sufficient information upon which to conclude that an award of $6,422.64 was reasonable. *Kappenman*, 522 N.W.2d at 204. This also makes it impossible for us to cogently review the issue. Accordingly, we reverse the award of attorney's fees to Wife and remand the matter to the trial court in order to admit Wife's prior itemized attorney's fee statements into evidence and determine a reasonable fee based upon them and the itemized statement already received.

[¶ 28.] We affirm, in part, and reverse and remand, in part.

[¶ 29.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.