2000 SD 16

**Kenneth A. BROOKS, Plaintiff and Appellant,**

v.

**MILBANK INSURANCE COMPANY, Defendant and Appellee.**

**Nos. 20830, 20854.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 13, 1999.

Decided Feb. 2, 2000.

---

John W. Burke of Schoenbeck Law Office, Webster, South Dakota, Attorney for plaintiff and appellant.

Michael J. Schaffer and Kristi Geisler Holm of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

JOHNS, Circuit Judge.

[¶ 1.] Kenneth Brooks appeals the trial court's dismissal of his action for bad faith refusal to pay an insurance claim, the denial of his motion to amend his complaint to reallege the bad faith action and the denial of his motion to reconsider the motion to amend.[1] By notice of review, Milbank Insurance Company appeals the granting of attorney's fees for vexatious or unreasonable refusal to pay and the granting of terms. We affirm in part, reverse in part and remand.

## STATEMENT OF THE FACTS

[¶ 2.] In late 1996, Kenneth Brooks purchased a 190 acre farm property in Roberts County, South Dakota for $80,000. The property, which included a barn, a house and a few small sheds, was insured with Milbank Insurance Company. In January 1997, Brooks submitted an insurance claim to Milbank after the roof of the barn collapsed under the weight of heavy snow. Milbank denied the claim on March 4, 1997, saying that the insurance policy did not provide coverage for that type of loss.

[¶ 3.] On March 13, 1997, nine days after the denial of Brooks' claim, the house located on Brooks' property was destroyed by fire. The only person present at the time of the fire was Delano DuMarce. Delano, his mother Kathy DuMarce and her boyfriend Jeff Keller rented the house from Brooks. Brooks submitted a claim for the loss of the house to Milbank. Within five days of the fire, Milbank had investigator Bob Huber interview Brooks and Keller. Milbank also hired David Robertson of Robco Fire Investigations Service to conduct an independent cause and origin investigation. After conducting an on-site investigation of the fire, Robertson sent samples of the debris to Rocky Mountain Instrumental Laboratories, Inc. for analysis. Rocky Mountain issued a laboratory report indicating that "very small concentrations" of petroleum distillates, *i.e.* gasoline and paint thinner residue, were present on two of the four samples received from Robertson. Upon receipt of the lab report, Robertson issued a fire investigation report concluding that "[a]ll of the indicators found in the investigation of the fire, point to the use of flammable accelerants to intensify the fire in the dwelling and to cause its destruction."

[¶ 4.] After issuance of Robertson's report, Milbank hired Dennis Olson, a pri-

---

1. Since we are of the opinion that the trial court improperly granted Milbank's motion to dismiss the bad faith claim for failure to state a claim upon which relief can be granted, we do not reach Brooks' second and third issues.

vate investigator, to conduct interviews. On April 21, 1997, Olson interviewed Jeff Keller, Delano DuMarce and certain fire personnel. Olson tape recorded the interview with DuMarce. During the interview, DuMarce repeatedly denied any involvement in the fire, but eventually, after veiled threats of impending incarceration, promises of leniency for the "truth," and statements making it clear what Olson proposed the "truth" to be, DuMarce stated that he started the fire. DuMarce said that Brooks had come to the house and promised to pay him $1,500 if he burned the house.

[¶ 5.] On April 26, 1997, Olson prepared a report for Milbank which characterized all of the interviews he conducted and which included the tape recording of his interview with Delano. Additionally, the report noted that Agent Bob Schuchardt of the Division of Criminal Investigation recorded two telephone calls DuMarce made to Brooks. During these conversations, Brooks adamantly denied any complicity in the burning of the house. However, the recordings were not attached to Olson's report for Milbank's review.

[¶ 6.] On April 28, 1998, Brooks submitted to a polygraph examination wherein he denied conspiring with DuMarce to burn the home. The polygraph examiner's report states that Brooks' responses revealed "significant criteria that would indicate deception."[2]

[¶ 7.] By letter dated June 9, 1997, Milbank denied Brooks' claim for the house fire. The letter stated that "our investigation has disclosed that there exists a factual basis on which to decline coverage for this loss on the basis of 'concealment or fraud.'" Milbank had also sought the advice of its attorney as to whether there was a good faith legal basis for the denial of Brooks' claim. On June 11, 1997, Milbank's attorney issued an opinion letter extrapolating the facts for the denial, concluding "I think you have a good faith basis for denying the claim and probably have a compelling reason to do so."

[¶ 8.] Because of the denial of his claim, Brooks initiated this suit alleging two causes of action: (1) breach of contract, and (2) first party bad faith refusal to pay. Pursuant to SDCL 15–6–12(b)(5), Milbank filed a motion to dismiss the bad faith claim for failure to state a claim on which relief could be granted. The trial court granted the motion stating "[n]o specific facts are pled to support the claim of bad faith, and therefore, the allegation of bad faith is dismissed."

[¶ 9.] During a later deposition by Brooks' attorneys, DuMarce again stated that both he and Brooks agreed to cause the fire. Despite DuMarce's deposition, Brooks sought leave of the trial court to amend his complaint per SDCL 15–6–15(a) to again include the bad faith claim. The trial court denied the motion. Six days later, DuMarce signed an affidavit prepared by Brooks' attorneys claiming that he did not start the fire and that he was never asked by Brooks to start the fire. DuMarce further claimed that the reason he said he started the fire at Brooks' behest was because Mr. Olson, the interviewer, led him to believe that he would be prosecuted for arson and sent back to jail if he did not cooperate. Based on this affidavit and the affidavits of certain members of the Sisseton Volunteer Fire Department, Brooks' attorneys filed a motion to reconsider the trial court's denial of the motion to amend the complaint. This motion was also denied. Thereafter, Milbank deposed DuMarce on two occasions prior to the jury trial.

[¶ 10.] A five day jury trial was conducted in October, 1998. By special interrogatory, the jury found that Brooks had not procured the fire and awarded him $15,-000, its determination of the value of the

2. These results, although not placed in evidence during the jury trial, were presented to the trial court during the hearing in which the court granted Milbank's motion to dismiss Brooks' bad faith claim for failure to state a claim upon which relief can be granted.

house. After trial, Brooks filed a motion requesting attorney's fees in accordance with SDCL 58–12–3 on the basis that Milbank's refusal to pay his claim was vexatious or without reasonable cause. Brooks' counsel sought $77,287.50 in attorney's fees based on 618.30 hours spent prosecuting the case at his firm's standard rate of $125 per hour. The number of hours and hourly rate were asserted in the motion for attorney's fees, the brief in support of the motion and in an affidavit by Brooks' counsel, John Burke. However, documentation of each hour spent on the case was not detailed for the court's review.

[¶ 11.] The hearing on Brooks' motion for attorney's fees was set for November 3, 1998. No one appeared for Milbank or secured a continuance in advance of the hearing. Although Milbank's attorney[3] apparently notified the clerk's office the day before the hearing of his inability to attend and sent a letter to Brooks' attorney stating he would not attend, Brooks' counsel never received the letter and appeared for the hearing. Because Milbank's counsel was unable to attend, the trial court continued the hearing. However, it also awarded Brooks' attorney's fees in the amount of $410 after Brooks' counsel filed an affidavit calculating the costs in mileage and his time in preparation and attendance at the hearing. On December 17, 1998, the hearing on attorney's fees finally took place and the trial court orally granted Brooks' motion for $77,287.50 in attorney's fees, the entire amount requested. Both Brooks and Milbank appeal.

### ANALYSIS

[¶ 12.] **1. Did the trial court improperly grant Milbank's motion to dismiss the first party bad faith action?**

[¶ 13.] Milbank moved to dismiss Brooks' first party bad faith action under SDCL 15–6–12(b)(5) which permits dismissal where the pleadings fail "to state a claim upon which relief can be granted[.]" The trial court granted the motion finding that Brooks failed to plead any specific facts to support the claim for relief.

[¶ 14.] The trial court improperly granted this motion since "[a] motion to dismiss under Rule 12(b)(5) tests the law of a plaintiff's claim, not the facts which support it." *Thompson v. Summers,* 1997 SD 103, ¶ 5, 567 N.W.2d 387, 390.

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

[*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957).] The question is whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint states *any valid claim of relief.*

*Schlosser v. Norwest Bank South Dakota,* 506 N.W.2d 416, 418 (S.D.1993) (emphasis added).

[¶ 15.] In his complaint, Brooks pled in part:

That the Defendant has breached the implied covenant of good faith and fair dealing under the policy by denying Plaintiff's claims without a reasonable basis for such conduct and with knowledge of or in reckless disregard of the lack of a reasonable basis for such conduct, causing Plaintiff damage . . .

This allegation along with the other allegations in the complaint sufficiently avers: the existence of a contract of insurance; a loss compensable under the terms of the policy; the absence of a reasonable basis for denial of the claim; and that the insurer knew there was not a reasonable basis to deny the claim or that the insurer acted in reckless disregard of the existence of a reasonable basis to deny the claim. These are the elements of a first party bad faith

3. Milbank's counsel on appeal did not repre-    sent Milbank at trial.

action. *See Walz v. Fireman's Fund Ins. Co.*, 1996 SD 135, 556 N.W.2d 68; *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752 (S.D.1994); *Matter of Cert. of a Question of Law*, 399 N.W.2d 320 (S.D. 1987). *See also* Roger M. Baron, *When Insurance Companies Do Bad Things: The Evolution of the "Bad Faith" Causes of Action in South Dakota*, 44 SD LRev 471 (1999). Thus, we conclude the trial court erred in granting Milbank's motion and we reverse and remand this issue to the trial court.

**[¶ 16.] 2. Did the trial court err in awarding Brooks attorney's fees of $77,287.50 under SDCL 58–12–3?**

[¶ 17.] SDCL 58–12–3 provides in relevant part that:

> In all actions or proceedings hereafter commenced against any . . . insurance company . . . on any policy . . . of insurance, if it appears from the evidence that such company . . . *has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause,* . . . the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs[.] (emphasis added).

Before a trial court can award attorney's fees under this section it must find that the insurance company refused to pay the full amount of the insured's loss and that said refusal was either vexatious or without reasonable cause. *North Star Mut. Ins. Co. v. Kneen*, 484 N.W.2d 908 (S.D. 1992). Milbank contends the trial court was clearly erroneous in finding both factors present here. Since these findings resolve questions of fact, they will not be reversed unless they are clearly erroneous. *Howie v. Pennington County*, 1997 SD 45, 563 N.W.2d 116.

> A trial court's finding is clearly erroneous if, "after reviewing the entire evidence, we are left with the definite and

firm conviction that a mistake has been made[.]" All conflicts in the evidence must be resolved in favor of the trial court's determinations. "The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the trial court and we give due regard to the trial court's opportunity to observe the witnesses and the evidence."

*Matter of Estate of Unke*, 1998 SD 94, ¶ 11, 583 N.W.2d 145, 148 (citations omitted).

[¶ 18.] In determining whether any attempt was made by Milbank to settle the claim and whether Milbank's denial of Brooks' claim was vexatious or without reasonable cause, the trial court made the following oral findings at the conclusion of the December 17, 1998, hearing:

> To my knowledge, and many times that I queried Mr. Blakely [Milbank's attorney] over the course of this thing as to whether or not the defendant had an offer to make, I don't remember ever getting a positive response from him. And this letter from Mr. Burke, he's assuming that they made an offer, I don't—from that I don't know. He may have been assuming wrong. As I said, I never knew Mr. Blakely to make an offer to settle this case. Any time that I asked him. And the only way that this case could be reasonably refused was to connect Mr. Brooks with this fire. And the only evidence that I saw during all this time to connect Mr. Brooks to this fire was Mr. Olson's tape of Mr. Delano DuMarce. And Mr. Blakely played that for the jury. He sat his tape recorder on that bar in front of the jury and played the whole thing and I, frankly, was very surprised that he did. I have never heard an interview like that conducted of anybody in my life. It was clear to this Court that anything that Mr. DuMarce said out of that interrogation was coerced. And was not his free will. I'm granting the plaintiff's motion and denying the defendant's motion.

Mr. Burke, you can prepare the order. We're in recess.

[¶ 19.] We first note that while the trial court issued written findings of fact and conclusions of law on December 23, 1998, Milbank did not propose any. Milbank did send a letter to the trial court objecting to paragraphs 2 through 8 of Brooks' proposed findings of fact and paragraphs 2 through 4 of Brooks' proposed conclusions of law. However, it did not object to paragraph 1 of the proposed findings and conclusions which incorporated the trial court's oral decision granting Brooks' "Motion for Attorney's Fees Pursuant to SDCL 58–12–3". Based upon Milbank's concession that the evidentiary findings made by the trial court were correct, we are unable to say that the trial court's ultimate findings, (1) that Milbank failed to pay the full amount of Brooks' loss and (2) that such refusal was either vexatious or without reasonable cause, are clearly erroneous. We also note that although there may be an evidentiary question as to whether Milbank offered Brooks $12,000 to drop all claims and cooperate in a prosecution of Delano DuMarce, this offer would not have been for the full amount of Brook's loss (determined by the jury to be $15,000) and would not be a reasonable offer considering all of its terms.

[¶ 20.] Milbank also contends that the trial court's award of $77,287.50 was improper and excessive. In so arguing, Milbank recognizes that the allowance of attorney's fees, as permitted by a specific statute, rests in the sound discretion of the trial court and that this court will not interfere unless there is an abuse of that discretion. *Rock v. Rock*, 89 S.D. 583, 236 N.W.2d 191, 194 (1975); *De Witt v. De Witt*, 86 S.D. 59, 191 N.W.2d 177 (1971).

[¶ 21.] Milbank claims that Brooks failed to make a showing that the number of hours claimed to have been expended was a reasonable number and that the hourly rate claimed was a reasonable rate. Recently, in *Dooley v. Dooley*, 1999 SD 136, ¶ 27, 601 N.W.2d 277, 282, we stressed the importance of itemized attorney fee requests. We said:

> Without any itemization or time frame for $3,641.64 of Wife's attorney's fees the trial court did not have sufficient information upon which to conclude that an award of $6,422.64 was reasonable. [*Kappenman v. Kappenman*, 522 N.W.2d 199, 204 (S.D.1994).] This also makes it impossible for us to cogently review the issue. Accordingly, we reverse the award of attorney's fees to Wife and remand the matter to the trial court in order to admit Wife's prior itemized attorney's fee statements into evidence and determine a reasonable fee based upon them and the itemized statement already received.

*Id.* As in *Dooley*, we are unable to cogently review this issue since Brooks never submitted any supporting documentation of his claimed expenses. Thus, we reverse and remand this issue.

[¶ 22.] Milbank also contends that this award is disproportionate to the result obtained and is, therefore, unreasonable. Milbank argues that the amount allowed for reasonable attorney's fees should never exceed what would be collected by an attorney under a contingency fee agreement. We reject this argument out of hand as it would encourage insurers to be recalcitrant and would discourage attorneys from representing persons who have been wrongfully denied coverage and/or a reasonable sum as compensation for a covered loss. This would be contrary to the best interests of the general public.

[¶ 23.] In sum, we affirm the trial court on its ultimate findings that Milbank failed to pay the full amount of the loss and that such refusal was either vexatious or without reasonable cause. We reverse the trial court's award of $77,287.50 for attorney's fees and remand the award for a determination of what would constitute a reasonable fee under all the circumstances. In this respect, the trial court is to consider only those fees attributable to the re-

covery of the amount due to Brooks under his contract of insurance (*i.e.* the breach of contract claim) and not those fees directly attributable to the tort action of first party bad faith refusal to pay.[4]

**[¶ 24.] 3. Did the trial court abuse its discretion when it awarded terms of $410 to Brooks because Milbank's counsel failed to appear for a scheduled hearing?**

[¶ 25.] When Milbank did not appear at a properly scheduled motion hearing for attorney's fees pursuant to SDCL 58-12-3, the trial court granted a continuance and assessed terms against Milbank to compensate Brooks for his attorney's expenses in attending the hearing. Milbank claims the trial court erred when it made this award.

[¶ 26.] In *Olesen v. Snyder,* 277 N.W.2d 729, 732–733 (S.D.1979), this Court stated that:

[t]he granting or refusal of a continuance rests within the sound discretion of the circuit court, and its rulings on motions for continuance will not be reversed on appeal in the absence of an abuse of discretion. SDCL 15–11–4; *Farmers and Merchants State Bank v. Mann,* 1973, 87 S.D. 90, 203 N.W.2d 173; *Hyde v. Hyde,* 1959, 78 S.D. 176, 99 N.W.2d 788; 17 CJS Continuances § 5, p. 375; 17 AmJur2d, Continuance, § 3, p. 120; Annot 67 ALR2d, § 3, p. 500. Further, every continuance that the circuit court grants "shall be upon such terms as the court may impose." SDCL 15–11–10. See also, 17 CJS Continuances § 104, p. 486; 17 AmJur2d, Continuance, § 50, p. 179.

[¶ 27.] In *Olesen,* 277 N.W.2d at 732–733, this Court upheld the circuit court's assessment of terms totaling $1000 in exchange for a continuance where new counsel appeared at a jury trial, but requested the continuance in order to adequately prepare for trial. The trial court awarded actual expenses the other parties incurred in attending and their attorney's expenses "in preparing for trial, his time and his expense in going to Chamberlain to be ready for trial." *Id.* at 733. "[T]he circuit court imposed the payment of $1,000 as a condition of granting the continuance in an effort to compensate defendants for the amount of expenses 'occasioned by the postponement.' We conclude that this was a reasonable term[.]" *Id.*

[¶ 28.] In the case at hand, the secretary for Milbank's attorney telephoned the clerk of court's office on the afternoon before the hearing advising that Milbank's attorney would not be available for the hearing. Brooks' attorney, however, drove 90 miles to attend the hearing claiming that he was unaware Milbank would not be present. Although Brooks' attorney requested that the hearing proceed, the trial court continued the hearing. However, the trial court also indicated it would entertain a motion for terms upon Brooks furnishing an affidavit documenting expenses. That same day, Brooks' attorney executed an affidavit requesting $22.50 in mileage and $387.50 in attorney's fees. Six days later, the trial court ordered Milbank to pay $410, the total amount of Brooks' expenses.

[¶ 29.] SDCL 15–11–10 states: "[e]very continuance or postponement granted upon application shall be upon such terms as the court may impose." Obviously, this statute grants authority to the trial court to equitably fashion terms in these circumstances. In light of this Court's interpretation of the above statute in *Olesen,* it is clear the trial court's assessment of $410 is not an abuse of discretion warranting re-

---

4. At the hearing, the trial court must determine both the reasonableness of the rate and hours claimed. In doing so, it should consider, among other factors: (1) the amount involved; (2) the intricacy and importance of the litigation; (3) the labor and time involved; (4) the skill required to draft pleadings and try the case; (5) the discovery procedures utilized; (6) the existence of complicated legal problems; (7) the time required; and (8) whether briefs were required. *Dooley,* 1999 SD 136 at ¶ 24, 601 N.W.2d at 281.

versal on appeal. The trial court simply compensated Brooks for his expenses in attending the hearing. This assessment was well within the trial court's prerogative and is, therefore, affirmed.

[¶ 30.] Affirmed in part, reversed in part and remanded.

[¶ 31.] MILLER, Chief Justice, SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

[¶ 32.] JOHNS, Circuit Judge, for GILBERTSON, Justice, disqualified.