985 So.2d 767 (2008)
Alisa DIGGS and Chandra Small
v.
Keith TILLMAN and AIG Specialty Auto Insurance Company
State Farm Mutual Automobile Insurance Company
v.
Keith Tillman and American International South Insurance Company.
Nos. 2007 CA 1041, 2007 CA 1042.
Court of Appeal of Louisiana, First Circuit.
March 26, 2008.
*768 Patrick Yancey, Houma, Louisiana, for Appellee, Chandra Small.
Jay J. Luke, Houma, Louisiana, for Appellant, State Farm Mutual Automobile Insurance Co.
J. Dana Ortego, Houma, Louisiana, for Appellees, Keith Tillman and American International South Insurance Company.
Before GAIDRY, McDONALD, and McCLENDON, JJ.
McCLENDON, J.
This is an appeal from a trial court judgment awarding damages following an automobile accident, but not allowing a credit to the uninsured/underinsured motorist (UM) insurer for medical payments it made under the medical payments portion of its insurance policy. Finding the collateral source rule inapplicable, we amend the judgment and, as amended, affirm.

FACTS AND PROCEDURAL HISTORY
On July 7, 2001, an automobile accident occurred in Houma, Louisiana, when a 1981 Oldsmobile operated by Keith Tillman ran a red light on Hollywood Road at the intersection of Main Street and hit a 2000 Honda Accord operated by Alisa Diggs. Riding as a guest passenger in the Honda was Ms. Diggs' sister, Chandra Small. As a result of the accident, Ms. Diggs and Ms. Small (plaintiffs) filed a petition for personal injuries, on November 29, 2001, against Tillman and AIG Specialty Auto Insurance Company (AIG), as the insurer of the Oldsmobile.[1] The Honda was owned by Barbara Ward, plaintiffs' mother, and insured by State Farm Mutual Automobile Insurance Company (State Farm). State Farm filed a separate suit against Tillman and AIG, asserting a subrogation claim to recover medical payments made on behalf of Ms. Diggs. The cases were consolidated on March 21, 2005.
Prior to trial, all of the claims of Ms. Diggs were resolved. Additionally, Ms. Small settled with Tillman and AIG for its policy limits in the amount of $10,000.00. What remained for trial was Ms. Small's claim for general damages against State Farm as the UM carrier and State Farm's claim that it was entitled to a $4,641.00 credit, representing the medical expenses it paid on behalf of Ms. Small under the medical payments provisions of the policy. At the commencement of trial, the parties stipulated 1) to State Farm's status as the UM insurer, 2) to State Farm's liability, 3) that Ms. Small received the $10,000.00 policy limits provided by AIG's policy, 4) that Ms. Small suffered wage losses in the amount of $1,312.50, 5) that State Farm paid $4,641.00, representing all the medical expenses incurred by Ms. Small, and 6) that State Farm waived its subrogation rights with regard to the medical payment amount.
Following trial, the trial court awarded Ms. Small $14,000.00 in general damages, $1,312.50 in lost wages, and $4,641.00 in medical expenses, for a total of $19,953.50. The trial court did not allow State Farm a *769 credit for the $4,641.00 paid under the medical payments portion of its policy, determining that said amount was from a collateral source. State Farm suspensively appealed, raising as its sole assignment of error the trial court's failure to allow the medical payment credit.

DISCUSSION
There are certain elementary legal principles which apply to the interpretation of insurance policies. An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. Marcus v. Hanover Ins. Co., Inc., 98-2040, p. 4 (La.6/4/99), 740 So.2d 603, 606; Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La.1988). Policy provisions which limit the insurer's liability or place restrictions on policy obligations should be enforced unless they conflict with statutes or public policy. Hanover, 98-2020 at p. 4, 740 So.2d at 606; Pareti, 536 So.2d at 421.
At the time of the accident herein, the State Farm policy provided UM coverage with limits of $10,000.00 and coverage for medical payments with limits of $5,000.00 to its insured, Ms. Ward, the owner of the Honda. Additionally, in Section III, regarding limits of liability under UM coverage, the policy provided:
4. The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage. (Emphasis added.)
State Farm contends that this policy language is clear and unambiguous and that it is entitled to a credit for the amount it paid under the medical payments portion of its policy.[2] State Farm further asserts that if the credit is not given, Ms. Small will be allowed double recovery from State Farm for the medical expenses, which the contractual provision was meant to prevent. Therefore, according to State Farm, the trial court clearly erred in failing to give State Farm the $4,641.00 credit.
We agree that the language in State Farm's policy is clear and unambiguous in allowing State Farm a credit for medical payments made under its medical payments coverage. Said policy provides that the UM coverage is excess over previously paid medical expenses. Thus, our next inquiry is whether any reason exists not to enforce the terms of the contract providing for such a credit. Ms. Small does not argue against the right of State Farm to limit its exposure as it did under the UM portion of its policy, but rather, she asserts that it would be against public policy to allow the credit because of the collateral source rule. Conversely, State Farm contends that the collateral source rule is inapplicable and that the policy considerations underlying the rule are not present under the facts of this case. More succinctly stated, the issue is whether the application of the clear language of State Farm's UM policy violates the public policy embodied in the collateral source rule.
The collateral source rule is of common law origin, yet it is well-established in the jurisprudence of this state. Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Bozeman v. *770 State, 03-1016, p. 9 (La.7/2/04), 879 So.2d 692, 698; Louisiana Dep't of Transp. and Dev. v. Kansas City Southern Ry. Co., 02-2349, p. 6 (La.5/20/03), 846 So.2d 734, 739. Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance. As a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits. Bozeman, 03-1016 at p. 9, 879 So.2d at 698; Kansas City Southern Ry. Co., 02-2349 at pp. 6-7, 846 So.2d at 739-40.
In the case sub judice, the tortfeasor was Keith Tillman. AIG and Tillman settled with Ms. Small, following payment of Tillman's $10,000.00 policy limits, and Tillman was released from this matter. Following trial, Ms. Small was awarded a total of $19,953.50 in damages, inclusive of her medical expenses of $4,641.00. The excess amount of $9,953.50 was clearly within State Farm's UM policy limits of $10,000.00. Thus, Ms. Small would not be prevented from a full recovery of her total damages by allowing State Farm a credit for its previous $4,641.00 medical expenses payment. Nor would Tillman, the tortfeasor, benefit from said credit, as he had been previously released by Ms. Small.[3]
Further, according to our jurisprudence, where a plaintiff's total damages do not exceed the UM policy limits and the language of the policy so provides, it is a well-settled rule that the UM carrier is entitled to a credit for any amount which it has paid to the plaintiff under the medical payments coverage. Boudreaux v. Colonial Lloyd's Ins. Co., 633 So.2d 682, 686 (La.App. 1 Cir.1993); Barnes v. Allstate Ins. Co., 608 So.2d 1045, 1046-47 (La.App. 1 Cir.1992), White v. Patterson, 409 So.2d 290, 294 (La.App. 1 Cir.1981), writ denied, 412 So.2d 1110 (La.1982). See also Webb v. Goodley, 512 So.2d 527, 531 (La.App. 3 Cir.1987); Taylor v. State Farm Mutual Automobile Ins. Co., 237 So.2d 690, 693 (La.App. 4 Cir.1970).
Therefore, we conclude that the collateral source rule is inapplicable under the specific facts and circumstances of this case. Permitting the credit sought herein is not contrary to the purposes behind the collateral source rule and would not result in a windfall to the tortfeasor. Under the plain language of the insurance policy, UM *771 coverage is excess to payments State Farm previously made under its medical payment coverage and thus, State Farm is entitled to a credit for the medical expenses it paid. Accordingly, the trial court erred in failing to credit State Farm $4,461.00, for the medical expenses it paid under the medical payment provisions of the insurance policy.

CONCLUSION
For the above reasons, we amend the judgment of the trial court and grant State Farm a credit in the amount of $4,641.00. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to Chandra Small.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The original petition was amended and supplemented to correct and reflect AIG's proper name as American International South Insurance Company. For purposes of this appeal, defendant shall be referred to as AIG.
[2] We note that this is not a claim being made under the subrogation portion of the insurance policy.
[3] Ms. Small refers to the cases of Griffin v. Louisiana Sheriff's Auto Risk Ass'n, 99-2944 (La.App. 1 Cir. 6/22/01), 802 So.2d 691, writ denied, 01-2117 (La.11/9/01), 801 So.2d 376, O'Connor v. Richfield, 03-0397 (La.App. 1 Cir. 12/31/03), 864 So.2d 234, writ not considered, 04-0655 (La.5/7/04), 872 So.2d 1069, and Arcemont v. Voisin, 468 So.2d 785 (La. App. 1 Cir.), writ denied, 474 So.2d 947 (La. 1985), in support of the application of the collateral source rule. However, we find these cases factually distinguishable from the present matter. Griffin involved contractual "write-offs" for medical services provided. Also, in Griffin, the injured party was not fully compensated for his damages, as they exceeded available insurance. The defendant sheriff's office would have received a windfall without the application of the collateral source rule. Similarly, in the O'Connor case, the injured parties' damages exceeded available insurance policy limits, and the tortfeasor was not dismissed prior to trial. The tortfeasor was seeking a credit of more than $66,000 in paid medical expenses and would have also benefited without application of the collateral source rule. In Arcemont, this court reversed the trial court and found UM coverage in effect on the car the plaintiff was driving, thereby giving the injured party an adequate source to compensate her for her injuries. However, the insurance policy in Arcemont did not contain the "excess" language regarding paid medical expenses present in this matter, a fact acknowledged by Ms. Small in her appellee brief.