# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3733

_____

| | | |
|---|---|---|
| Andrea G. Bjornestad, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Progressive Northern Insurance | * | |
| Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 19, 2011
Filed: December 29, 2011

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Andrea Bjornestad suffered injuries in a motor vehicle accident and settled her claims against the at-fault driver. She then sought $75,000 from her own insurer, Progressive Northern Insurance Company (Progressive), an amount which represented the remaining limits of her underinsured motorist (UIM) coverage. When Progressive offered $25,000 to settle the UIM claim, Bjornestad brought suit asserting claims of breach of contract and bad faith. After a jury awarded Bjornestad the full amount of her UIM coverage, but denied her bad faith claim, the district

court[1] found Progressive's refusal to pay was "vexatious or without reasonable cause" and awarded Bjornestad attorney's fees pursuant to S.D. Codified Laws § 58-12-3. Progressive appeals arguing the jury's rejection of Bjornestad's bad faith claim should preclude an award of fees under § 58-12-3. We disagree and therefore affirm.

I

On December 7, 2005, Andrea Bjornestad was driving her vehicle and stopped at a red light when her car was rear-ended by a vehicle driven by Nycole Hansen. The force of the collision was significant enough that Hansen's vehicle sustained disabling damage and had to be towed from the scene. Hansen was insured under a policy which had liability limits of $25,000, the minimum amount allowed by South Dakota law. Bjornestad was insured by Progressive under a policy which provided $100,000 in UIM coverage.

Although the injuries Bjornestad suffered as a result of the rear-end collision initially appeared to be minor, two months after the accident a doctor indicated she had a congenital anomaly in her low back which had been aggravated by the accident and complicated her recovery. She settled her claim against Hansen for the full $25,000 available under Hansen's policy. Because of her complications, Bjornestad also sought payment from Progressive under her UIM coverage. On November 9, 2007, Bjornestad demanded $100,000 from Progressive for her UIM benefits. Although Bjornestad demanded the full limits of her UIM coverage, the amount available under her policy was actually limited to $75,000 because Progressive was entitled to offset the $25,000 Bjornestad received from the at-fault driver. See Nickerson v. Am. States Ins., 616 N.W.2d 468, 471 (S.D. 2000) ("[A]ll monies

---

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

received from the tortfeasor . . . are deducted from the excess UIM carrier's policy limits to calculate the amount owed to the insured.").

A little over two months later, Progressive offered to pay Bjornestad $25,000 in exchange for a full and final release of all claims against it. At the time of the offer, Bjornestad's medical expenses alone totaled $24,300, without considering her future medical expenses, past and future economic loss, pain, suffering, impairment, and loss of enjoyment of life. Bjornestad rejected the offer. Progressive then hired an independent medical examiner (IME) to conduct a review of Bjornestad's medical records. The IME opined Bjornestad had only suffered a mild neck strain in the accident, and the accident did not contribute to, or aggravate, the congenital low back condition. Progressive once again offered to settle for $25,000. Bjornestad again rejected the offer.

In June 2008, Bjornestad sued Progressive in state court alleging claims for breach of contract and bad faith, and seeking punitive damages and attorney's fees. Progressive removed the action to federal district court. In August 2010, the case proceeded to trial on both the breach of contract and bad faith claims. By the time of trial, Bjornestad's medical expenses had increased to $50,027. The jury returned a verdict in Bjornestad's favor on the breach of contract claim and awarded $75,000 in compensatory damages, the full amount of her UIM benefits. The jury, however, rejected Bjornestad's bad faith claim.

Following trial, Bjornestad moved for an award of attorney's fees pursuant to S.D. Codified Laws § 58-12-3[2] arguing Progressive's failure to pay the full amount

---

[2]S.D. Codified Laws § 58-12-3 provides in relevant part: "[I]f it appears from the evidence that [an insurer] has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, . . . the trial court . . . shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected[.]"

of her loss was vexatious or without reasonable cause. Progressive opposed the motion arguing, in part, the defense verdict on the bad faith claim should preclude an award of fees on the contract claim under § 58-12-3. The district court rejected that argument, stating "[a]lthough whether Progressive acted in bad faith and whether Bjornestad is entitled to attorney fees [under § 58-12-3] raise similar issues, they are considered under different standards." Bjornestad v. Progressive N. Ins. Co., No. CIV 08-4105, 2010 WL 4687640 at *2 (D. S.D. Nov. 10, 2010). The district court found an award of fees was appropriate, focusing on the following facts: (1) at the time Progressive offered to settle Bjornestad's claim for $25,000, Progressive itself had valued the UIM claim at a range above that amount ($25,350 to $50,350); (2) the Progressive claim specialist handling Bjornestad's file communicated to Bjornestad's attorney that Progressive had valued the claim at even less than $25,000, which conflicted with Progressive's actual evaluation range; (3) Progressive inaccurately told its IME that Bjornestad's low back pain did not begin until February 14, 2006, even though Progressive knew the low back pain and low back treatment began the day after the December 2005 car accident; and (4) Progressive demanded a full and final release of all claims as a condition of its $25,000 offer. Id. at *3. The district court concluded:

> At the time Progressive should have paid under its contract with Bjornestad, the facts did not justify Progressive's repeated attempts to force its insured to settle for less than the value of the claim in exchange for a full waiver of all claims by making false representations during settlement negotiations.

Id. The district court then awarded Bjornestad attorney's fees in the amount of $45,718.60. Progressive filed a timely appeal. On appeal, Progressive argues the jury's rejection of Bjornestad's bad faith claim should preclude an award of attorney's fees under § 58-12-3 as a matter of law. Progressive also contends the facts in this case do not support an award of attorney's fees.

## II

Progressive argues it was wrong as a matter of law and fact for the district court to award attorney's fees under § 58-12-3 because the jury rejected Bjornestad's bad faith claim. We review Progressive's legal claim de novo. See Hanig v. City of Winner, S.D., 527 F.3d 674, 676 (8th Cir. 2008) (indicating a district court's interpretation of South Dakota law is reviewed de novo). We review the fact claim for clear error. See First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 811 (8th Cir. 1993) ("The question of whether the insurance company acted vexatiously or unreasonably [under § 58-12-3] is a question of fact and reviewed under the clearly erroneous standard."). A district court's finding of fact is clearly erroneous only when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003) (internal quotation marks and citation omitted).

## A

First, we address Progressive's legal argument that a defense verdict on a plaintiff's bad faith claim necessarily precludes a trial court from finding the insurer's conduct was "vexatious or without reasonable cause" under § 58-12-3. We recently decided this issue in another case argued on the same day as this one. See Tripp v. W. Nat'l Mut. Ins. Co., __ F.3d __, __ (8th Cir. 2011). In Tripp, we examined the South Dakota Supreme Court's decision in Brooks v. Milbank Insurance Co., 605 N.W.2d 173 (S.D. 2000), and decided Brooks foreclosed the argument that a verdict for the insurer on a bad faith claim precludes a finding of vexatiousness or unreasonableness under § 58-12-3. We summarized our holding by stating:

> We now conclude expressly what Brooks necessarily implies: a jury's adverse finding on a bad faith claim does not, as a matter of law,

preclude a trial court from awarding attorney's fees under § 58-12-3. Rather, just like in those cases where a jury finds an insurer acted in bad faith, a trial court should undertake a separate analysis to determine whether the insurer's refusal to pay was vexatious or without reasonable cause in those cases where a jury finds an insurer did not act in bad faith.

Tripp, __ F.3d at __. We also gave three additional reasons for our decision in Tripp: (1) the insurer's argument was not supported by the language of the statute; (2) the elements of a bad faith claim are different than the factors a trial court considers when deciding whether to award fees under § 58-12-3; and (3) the different purpose served by a jury verdict on a tort claim of bad faith when compared to the purpose served by a trial court's award of fees on a contract claim under § 58-12-3. Id. at __.

Our decision in Tripp disposes of the legal argument advanced by Progressive. We therefore conclude the district court did not err when it determined it could consider whether Bjornestad was entitled to attorney's fees on her successful contract claim, notwithstanding the defense verdict on the bad faith claim.

B

Next, we address whether the district court clearly erred when it found Progressive's refusal to pay Bjornestad's contract claim was vexatious or without reasonable cause under the facts of this particular case.

As recited above, the district court found Progressive's refusal to pay was unreasonable based on the presence of four factors: (1) Progressive's settlement offer was less than Progressive's own estimate of the value of Bjornestad's case; (2) Progressive made misleading, if not false, representations to Bjornestad (through her attorney) about the value Progressive placed on Bjornestad's claim; (3) Progressive provided inaccurate information to its IME about the onset date of Bjornestad's low

-6-

back pain; and (4) Progressive repeatedly requested a full and final release from Bjornestad in exchange for its $25,000 offer even though Progressive itself valued the UIM claim higher than $25,000.

The first of these four factors – making a settlement offer to an insured for less than the insurer's own estimate of the value of the claim – was also present in Tripp. The insurer made a $10,000 settlement offer even though its own valuation of the UIM claim was between $20,000 and $50,000 (and possibly as high as $120,000 to $150,000). Id. at __. Although Progressive's settlement offer was not as far below its own estimate of the UIM claim as was the insurer's in Tripp, Progressive's offer was nevertheless still below its own valuation. While we recognize evaluating a personal injury claim is an inexact science, we cannot say a district court clearly errs in finding an insurer's conduct unreasonable when the insurer offers to settle with its own insured in an amount less than it values her claim to be worth. This is particularly true in this case, where the district court also found the insurer misrepresented its estimated value of the claim to its own insured. In addition, by the time of trial, Bjornestad's medical expenses alone exceeded $50,000 without even considering the value of her additional claims for permanent impairment, pain, suffering, and loss of enjoyment of life. The amount of incurred medical expenses, as well as the jury's verdict awarding the maximum amount of UIM limits, casts some doubt on the reasonableness of Progressive's $25,350 to $50,350 estimate of the value of the UIM claim.

A trial court's decision to award or deny fees under § 58-12-3 is necessarily a fact-driven inquiry. See Howie v. Pennington Cnty., 563 N.W.2d 116, 119 (S.D. 1997) ("[T]he determination as to whether the insurer engaged in vexatious or unreasonable conduct depends on the facts of each particular case."). Our task is not to be the finder of fact, but is limited to determining whether the finder of fact clearly erred. Reasonable fact-finders may disagree on whether an insurer's refusal to pay amounts to vexatious or unreasonable conduct based on the facts of a particular case.

-7-

Here, the district court considered the evidence – which included evaluating the credibility of the witnesses who testified on Progressive's behalf – and found Progressive's conduct to be vexatious or unreasonable.  See Cook v. City of Bella Villa, 582 F.3d 840, 854 (8th Cir. 2009) (indicating a trial court's findings of facts are generally accorded deference when they turn on credibility determinations).  After reviewing the record, we are not left with a definite and firm conviction a mistake was made.  We therefore conclude the district court did not clearly err in finding Progressive's refusal to pay was vexatious or without reasonable cause.

III

We affirm the district court's award of attorney's fees under S.D. Codified Laws § 58-12-3.

_____