# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3759

_____

Cindy Tripp; Lyle Tripp,                    *
                                            *
          Appellees,                        *
                                            *   Appeal from the United States
     v.                                     *   District Court for the
                                            *   District of South Dakota.
Western National Mutual Insurance           *
Company,                                    *
                                            *
          Appellant.                        *

_____

Submitted: October 19, 2011
Filed:  December 29, 2011

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Cindy Tripp suffered injuries in a motor vehicle accident and settled her claims against the at-fault driver.  She then sought $150,000 from her own insurer, Western National Mutual Insurance Company (Western), an amount which represented the remaining limits of her underinsured motorist (UIM) coverage.  When Western only offered $10,000 to settle the UIM claim, Tripp brought suit asserting claims of breach of contract and bad faith.  After a jury awarded Tripp the full amount of her UIM

coverage, but denied her bad faith claim, the district court[1] found Western's refusal to pay was "vexatious or without reasonable cause" and awarded Tripp attorney's fees pursuant to S.D. Codified Laws § 58-12-3. Western appeals arguing the jury's rejection of Tripp's bad faith claim should preclude an award of fees under § 58-12-3. We disagree and therefore affirm.

I

On September 12, 2004, Cindy Tripp was driving her automobile on the way to a shopping trip with her daughter when she was hit from behind by Jeffrey Christensen. The force of the collision was significant enough to deploy Christensen's airbag, and his vehicle sustained severe front end damage and had to be towed from the scene. Tripp's vehicle sustained $3,000 in damage. Since the accident, Tripp has suffered from ongoing pain in her neck, head, shoulders, arms, and upper back. Tripp also has recurring headaches and sleeplessness, among other symptoms. To control the pain, Tripp has received extensive therapy and taken pain medications. The accident has caused Tripp to curtail her daily activities and affected her professional work as a hair stylist.

At the time of the accident, Western insured Tripp under a motor vehicle policy which included UIM coverage of $250,000 and medical pay benefits of $5,000. Tripp informed Western of the accident in a timely manner. Western told Tripp her insurance would only cover her medical pay benefits of $5,000. In March 2007, Tripp notified Western she had brought a negligence action against Christensen, and told Western she would be pursuing a claim for UIM benefits under her own policy. Western indicated it would seek recoupment of the $5,000 in medical pay benefits against the recovery Tripp might receive in her action against Christensen.

---

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

Christensen's insurance policy had liability limits of $100,000. After substantial negotiations, Tripp and Christensen settled their suit for $87,500, which both Tripp and Western agree was the "best settlement" that could be reached. See Schultz v. Heritage Mut. Ins. Co., 902 F. Supp. 1051, 1057 (D.S.D. 1995) (noting "[w]here the best settlement available is less than the tortfeasor's liability limits, the insured should not be forced to forego settlement and go to trial" in order to preserve a potential UIM claim). On October 9, 2008, the day after the settlement, Tripp gave Western a Schmidt/Clothier notice[2] and granted it a reasonable time to substitute its draft for Christensen's. Tripp also notified Western she still intended to pursue a claim for UIM benefits. Western indicated it would not be substituting its draft.

Although Tripp had UIM coverage of $250,000, Western was entitled to have this amount offset by $100,000, or the full amount of Christensen's liability coverage. See Nickerson v. Am. States Ins., 616 N.W.2d 468, 471 (S.D. 2000) ("[A]ll monies received from the tortfeasor . . . are deducted from the excess UIM carrier's policy limits to calculate the amount owed to the insured."); Schultz, 902 F. Supp. at 1057 (explaining a UIM carrier is credited for the full amount of a tortfeasor's liability limits when an insured accepts a below-limits settlement). Accordingly, on January 15, 2009, Tripp demanded Western pay the remaining $150,000 limits of her UIM policy. Tripp claimed her total damages far exceeded the $87,500 settlement from Christensen, as evidenced by medical expenses of almost $24,000, prescription medical expenses of more than $6,000, and estimated damages of more than $300,000

---

[2]The Schmidt/Clothier notice derives it name from a Minnesota Supreme Court decision which first recognized a UIM carrier is entitled to notice of an expected settlement between its insured and a tortfeasor in order to protect its subrogation rights against the tortfeasor by substituting its payment for the tortfeasor's. See Schmidt v. Clothier, 338 N.W.2d 256, 263 (Minn. 1983). This method of preserving the UIM carrier's subrogation rights has been adopted by other jurisdictions, including South Dakota. See, e.g., Harter v. Plains Ins. Co., 579 N.W.2d 625, 631 n.3 (S.D. 1998).

in past and future economic loss, pain, suffering, impairment, and loss of enjoyment of life. In response to Tripp's $150,000 demand, Western offered only $10,000 to settle the UIM claim, despite the fact that Western's claim file indicated it "look[ed] at this claim as having a range of $120,000 – 150,000."

On February 27, 2009, Tripp filed suit against Western alleging claims for breach of contract and bad faith. In support of her claims, Tripp asserted Western knew about her accident since September 12, 2004, had notice of her UIM claim since March 6, 2007, and yet did nothing to independently investigate her UIM claim, such as request additional information from her treating physicians, seek an independent medical examination, retain an economist regarding her future wage loss, or conduct any qualified economic analysis on its own. Tripp's breach of contract and bad faith claims proceeded to trial. At trial, the jury returned a verdict in Tripp's favor on the breach of contract claim and awarded $150,000 in damages, the full amount of her UIM benefits. The jury, however, rejected Tripp's bad faith claim.

After trial, Tripp moved for attorney's fees pursuant to S.D. Codified Laws § 58-12-3, which provides, "if it appears from the evidence that [an insurer] has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, . . . the trial court . . . shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected[.]" Western argued the district court should not award attorney's fees because the jury rendered a defense verdict on Tripp's bad faith claim. The district court rejected that argument, concluding South Dakota law did not require the statutory fee award to "hinge[] on the . . . outcome of the bad faith claim." Tripp v. Western Nat'l Mut. Ins. Co, Civ. No. 09-4023-KES, 2010 WL 4791819 at *3 (D. S.D. Nov. 17, 2010) (citing Brooks v. Milbank Ins. Co., 605 N.W.2d 173, 177-78 (S.D. 2000)). The district court found an award of fees was appropriate, focusing on Western's settlement offer of $10,000 when its own estimate of the value of Tripp's claim was between $120,000 and $150,000. See id. at *2 ("Because Western

National valued the Tripps's underinsured motorist benefits claim at $120,000 to $150,000, Western National's settlement offer of $10,000 had no reasonable basis."). In so concluding, the district court also considered Western's contention that its total estimate of Tripp's claim included the $100,000 available under the tortfeasor's policy, stating:

> If Western National's explanation is true, then according to Western National's own calculation of Tripps's losses, the Tripps were entitled to between $20,000 and $50,000 [in UIM coverage]. As a result, Western National's offer of $10,000 was *half* of the bottom end of the Tripps's losses. The Tripps purchased underinsured motorist coverage from Western National to cover losses that exceeded a tortfeasor's policy limits. Western National determined this amount to be *at least* $20,000. The Tripps did not purchase underinsured motorist coverage from Western National so that Western National could nickel and dime them and try to get its own insured to accept half of what it calculated the Tripps's losses to be. Simply put, if Western National determined that the Tripps suffered at least $20,000 in excess of the tortfeasor's policy limits, then the offer with regard to the Tripps's underinsured motorist claim should have been at least $20,000. The court finds that the offer of $10,000 under these circumstances constitutes vexatious conduct that entitles the Tripps to reasonable attorney fees under SDCL 58–12–3.

Id. The district court awarded Tripp attorney's fees in the amount of $65,000. Western filed a timely appeal. On appeal, Western contends the jury's rejection of Tripp's bad faith claim should preclude an award of attorney's fees under § 58-12-3.

II

Western argues it was wrong as a matter of law and fact for the district court to award attorney's fees under § 58-12-3 because the jury rejected Tripp's bad faith claim. We review Western's legal claim de novo. See Hanig v. City of Winner, S.D., 527 F.3d 674, 676 (8th Cir. 2008) (indicating a district court's interpretation of South

-5-

Dakota law is reviewed de novo). We review the fact claim for clear error. See First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 811 (8th Cir. 1993) ("The question of whether the insurance company acted vexatiously or unreasonably [under § 58-12-3] is a question of fact and reviewed under the clearly erroneous standard."). A district court's finding of fact is clearly erroneous only when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Sanders, 341 F.3d 809, 818 (8th Cir. 2003) (internal quotations and citations omitted).

A

First, we address Western's legal argument that a defense verdict on a plaintiff's bad faith claim necessarily precludes a trial court from finding the insurer's conduct was "vexatious or without reasonable cause" under § 58-12-3. In addressing this contention, we keep in mind "[t]he obvious objective of SDCL 58-12-3 is to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." All Nation Ins. Co. v. Brown, 344 N.W.2d 493, 494 (S.D. 1984). We also note the statute must be "given a liberal construction with a view to effect [its] objects and to promote justice." Id. (citing S.D. Codified Laws § 2-14-12).

When interpreting § 58-12-3, the South Dakota Supreme Court has consistently disavowed any connection between the contract-based claims governed by the statute and the tort-based claim of bad faith. See Brooks v. Milbank Ins. Co., 605 N.W.2d 173, 179-80 (S.D. 2000) (limiting an award of fees under § 58-12-3 to those attributable to an insured's contract claim "and not those fees directly attributable to the tort action of first party bad faith refusal to pay"); Isaac v. State Farm Mut. Auto Ins. Co., 522 N.W.2d 752, 763 (S.D. 1994) ("[A] finding of bad faith on the part of an insurance company does not mean 'ipso facto' that its conduct was vexatious or

without reasonable cause [under § 58-12-3]."); Crabb v. Nat'l Indem. Co., 205 N.W.2d 633, 639 (S.D. 1973) (indicating a finding of bad faith "does not signify [the insurer's] conduct was 'vexatious or without reasonable cause', as a matter of law"). Our court, likewise, has recognized the statute has no direct connection with a tort claim of bad faith. See Kirchoff v. Am. Cas. Co. of Reading, Pa., 997 F.2d 401, 406-07 (8th Cir. 1993) (concluding § 58-12-3 does not allow recovery of attorney fees for a successful tort claim of bad faith because the statute only applies to breach of contract claims); but cf. Luke v. Am. Family Ins. Co., 476 F.2d 1015, 1023 (8th Cir. 1973) (affirming a denial of fees under § 58-12-3 and noting the absence of bad faith is "relevant to the issue as to whether the refusal was 'vexatious or without reasonable cause'"). Thus, in situations where a jury finds in *favor* of an insured on a tort claim of bad faith, South Dakota law requires a separate analysis to determine whether an insured's refusal to pay is vexatious or without reasonable cause under § 58-12-3. See, e.g., Biegler v. Am. Family Mut. Ins. Co., 621 N.W.2d 592, 607 (S.D. 2001) (undertaking a separate analysis to determine whether an insurer's conduct was vexatious or without reasonable cause despite a jury's finding of bad faith).

Western argues a separate analysis should not be required when the converse is true, that is, where a jury finds *against* an insured on a bad faith claim. In other words, Western argues an unsuccessful bad faith claim should "ipso facto" mean an insurer's refusal to pay cannot be found to be vexatious or without reasonable cause under § 58-12-3. Although the South Dakota Supreme Court has not directly addressed this issue, the necessary import of the holding in Brooks v. Milbank Insurance is that Western's argument must fail. In Brooks, the South Dakota Supreme Court affirmed a trial court's award of fees under § 58-12-3, despite the trial court's dismissal of a bad faith claim brought by the insured. 605 N.W.2d at 177-80. Significantly, although the appellate court reversed and remanded the trial court's dismissal of the bad faith claim, id. at 177-78, it never indicated the grant of attorney's fees was dependent upon the ultimate success of the bad faith claim. Instead, the attorney's fee award under § 58-12-3 was affirmed before the case was remanded,

-7-

despite the pending status of the bad faith claim. Thus, <u>Brooks</u> necessarily stands for the proposition that an award of fees under § 58-12-3 does not depend upon a jury's finding of bad faith. For if the jury declined to make a finding of bad faith on remand, the attorney's fee award on the breach of contract claim would still stand.

We now conclude expressly what <u>Brooks</u> necessarily implies: a jury's adverse finding on a bad faith claim does not, as a matter of law, preclude a trial court from awarding attorney's fees under § 58-12-3. Rather, just like in those cases where a jury finds an insurer acted in bad faith, a trial court should undertake a separate analysis to determine whether the insurer's refusal to pay was vexatious or without reasonable cause in those cases where a jury finds an insurer did not act in bad faith.

We reach this conclusion based upon our reading of <u>Brooks</u>, as well as for a number of other reasons. First, we find no language in the statute itself to support Western's argument. The statute does not require a jury to find an insurer committed the tort claim of bad faith before a court may find an insurer acted vexatiously or without reasonable cause by refusing to pay a contract claim. Second, although we recognize some overlap between bad faith conduct and a vexatious or unreasonable failure to pay, see <u>Luke</u>, 476 F.2d at 1023 (recognizing good faith is "relevant" to determining whether an insurer's refusal to pay was vexatious or without reasonable cause), the South Dakota Supreme Court has stated vexatiousness "is not an element of a bad faith claim." <u>Bertelsen v. Allstate Ins. Co.</u>, 796 N.W.2d 685, 696 (S.D. 2011). Thus, while a trial court may certainly consider the jury's disposition of a bad faith claim relevant, it is not bound by such a finding because the elements of a bad faith claim are distinct from the elements a court considers under § 58-12-3.

Finally, we note the different purposes served by a jury verdict on a bad faith claim and a court's award of fees on a contract claim under § 58-12-3. A bad faith claim is tortious in nature and intended to (1) punish an insurer in order to deter future "acts deemed socially unacceptable" and (2) compensate a claimant for the loss

of damages caused by the bad faith conduct. Trouten v. Heritage Mut. Ins. Co., 632 N.W.2d 856, 863-64 (S.D. 2001) (quoting Egan v. Mut. of Omaha Ins. Co., 620 P.2d 141, 146 (Cal. 1979)). In contrast, § 58-12-3 only applies to contracts claims and is remedial in nature, designed to recompense a claimant for the legal expenses incurred when an insurance company unreasonably forces the claimant to resort to litigation to obtain contractual benefits. See Brown, 344 N.W.2d at 494. We therefore conclude the district court did not err when it determined the statutory fee award did not hinge on the outcome of the bad faith claim.

B

Next, we address whether the district court clearly erred when it found Western's refusal to pay Tripp's contract claim was vexatious or without reasonable cause.

The district court found Western's own files supported Tripp's claim that the refusal to pay was without reasonable cause. Western's claims adjuster valued Tripp's claim "as having a range of $120,000 – 150,000." The district court therefore found Western's $10,000 offer had no reasonable basis because Western itself valued the UIM claim much higher. Western's valuation was consistent with the jury's award of $150,000, the full amount of remaining UIM benefits. In addition, the district court gave Western the benefit of its contention that its valuation range included the $100,000 available under the tortfeasor's policy, and still found Western's refusal to pay was unreasonable. Western's $10,000 offer was well below the $20,000 to $50,000 in additional money Western itself believed the claim was worth. As the district court stated, "[t]he Tripps did not purchase underinsured motorist coverage from Western National so that Western National could nickel and dime them and try to get its own insured to accept half of what it calculated the Tripps's losses to be." Tripp, 2010 WL 4791819 at *2.

-9-

In addition, other evidence in the record supports the district court's finding. See Metro Motors v. Nissan Motor Corp., 339 F.3d 746, 750 (8th Cir. 2003) ("[W]e may affirm based on any ground supported by the record[.]"). An award of fees under § 58-12-3 is warranted where the insurer "made an inadequate investigation of plaintiff's loss." Eldridge v. Nw. G.F. Mut. Ins. Co., 221 N.W.2d 16, 21 (S.D. 1974). In Eldridge the insurance adjuster "did not make a personal investigation of the damage." Id. While the South Dakota Supreme Court noted attorney's fees are not necessarily appropriate simply because the insurer refused to pay a policy holder's claim, "no matter how unfounded or unreasonable such claim may appear to be," the court stated:

> We emphasize the fact that our holding is based upon the fact that there was no adequate, good faith investigation of plaintiff's claim of additional storm damage to his home. If anything, the record reveals a lackadaisical, if not an outright cavalier, attitude on the part of the adjustor. Certainly the claim was not processed by the adjustor with that degree of speed and attention that one paying a premium for property insurance could fairly expect to receive.

Id. at 22.

We believe a similar observation is warranted here. Early on, Tripp gave Western notice her damages would exceed the amount of Christensen's liability limits, and she would be pursuing a UIM claim. Yet Western did little to independently investigate her claim. It did not request additional information from Tripp's treating physicians, seek an independent medical examination, or retain an economist regarding Tripp's claimed future wage loss. While Western certainly did not have to pay Tripp's claim if there were disputes about the validity of the claim, Western's own files revealed it valued Tripp's claim much higher than its offer. Thus, this case stands in contrast to those where fees were not awarded because there was "a bona fide and reasonable factual ground for contesting the insured's claim[.]"

Howie v. Pennington Cnty., 563 N.W.2d 116, 119 (S.D. 1997) (internal quotation marks and citation omitted); see also Am. Family Mut. Ins. Co. v. Merrill, 454 N.W.2d 555, 560 (S.D. 1990) (holding an insurer's conduct was not vexatious where it relied on a justified coverage defense and sought a judicial determination of the coverage question); First Dakota, 2 F.3d at 811-12 ("An insurance company is not guilty of vexatious or unreasonable conduct by asserting and relying on its legitimate coverage defenses.").

Given the facts in this particular case, we do not believe the district court clearly erred in finding Western's refusal to pay was vexatious or without reasonable cause. Cf. Firemen's Ins. Co. of Newark v. Bauer Dental Studio, Inc., 626 F. Supp. 1365, 1367 (D.S.D. 1986) ("While it is true that an insurer should not be penalized for contesting in good faith its liability, this principle has no application where, as here, the Company first determined there was coverage, then engaged in a two-year pattern of delay in adjusting the claim, and finally, . . . tendered a settlement offer far below the amount due.") (internal citation omitted).

### III

We affirm the district court's award of attorney's fees under S.D. Codified Laws § 58-12-3.

_____