#27521-a-DG
**2016 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TROY KERN,                                        Plaintiff and Appellant,

    v.

PROGRESSIVE NORTHERN
INSURANCE COMPANY,                      Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT A. MANDEL
Judge

\* \* \* \*

CHARLES ABOUREZK
JON J. LAFLEUR of
Abourezk, Zephier & LaFleur, P.C.
Rapid City, South Dakota                    Attorneys for plaintiff and
    appellant.


MARK J. ARNDT of
May & Johnson, P.C.
Sioux Falls, South Dakota                   Attorneys for defendant and
    appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 23, 2016
OPINION FILED **07/20/16**

#27521

GILBERTSON, Chief Justice

[¶1.] Troy Kern was involved in a rear-end collision in 2005. The other driver was at fault but did not have sufficient insurance to cover Kern's injuries. Kern thus filed an underinsured motorist claim with his insurance provider, Progressive. After months of unsuccessful negotiations, Kern sued Progressive for bad faith alleging that its settlement offers had been intentionally inadequate. He also sued for unpaid underinsured motorist (UIM) benefits. A jury subsequently awarded Kern $18,650 in UIM benefits but did not find that Progressive acted in bad faith. Kern appeals both the award and the bad faith finding. We affirm.

## Background

[¶2.] In August 2005, Kern was involved in an accident in Rapid City. The vehicle in front of him stopped abruptly, and while Kern was able to stop before a collision, he was rear-ended by the vehicle behind him. According to the accident report, Kern told the police he was traveling approximately 10 mph and the vehicle collided into him at about 15 mph. A photograph taken at the time of the accident did not depict any significant damage to Kern's vehicle, but there was noticeable damage to the tortfeasor's vehicle. Kern did not complain of any injuries at the scene.

[¶3.] Progressive received notice of the accident shortly after it occurred, and informed Kern that his policy provided for $5,000 in medical payments coverage. Kern's policy with Progressive also provided $100,000 in UIM coverage. The tortfeasor who collided with Kern maintained a Geico auto policy providing $25,000 in liability coverage. Kern accepted the medical payments coverage

amount, but exhausted it approximately five months after the accident. There was little contact between the parties for over a year, until Kern filed a UIM claim in February of 2007, alleging the accident caused an injury to his left shoulder and that treatment cost surpassed Progressive's medical payments disbursement.

[¶4.] After Kern filed the UIM claim, Progressive assigned Loren Sedevie as claims handler. Sedevie's supervisor was Delores Hoime. After his assignment, Sedevie began collecting Kern's medical records. In February 2008, Progressive retained Dr. Nolan Segal to conduct an independent review of Kern's medical records and to render opinions regarding the nature and extent of the injuries. No photographs of the tortfeasor's vehicle were provided to Segal. He opined that the accident appeared to be low velocity, that Kern had extensive neck and back complaints prior to the accident, his post-accident complaints did not differ significantly from his pre-accident complaints, and that there was no evidence that Kern sustained a left shoulder injury due to the accident.

[¶5.] In March 2008, Kern informed Progressive that he had settled his claim with Geico. Geico agreed to pay $20,000 directly to Kern, and offered to pay $5,000 to Progressive in subrogation for the medical payments coverage Progressive previously paid to Kern. At this point, Kern had received a total of $25,000 for his injuries—$20,000 from Geico as a part of the tortfeasor's liability policy, and $5,000 from Progressive as a part of Kern's medical payments coverage.

[¶6.] After the Geico claim was settled, Kern and the claims adjuster Sedevie engaged in settlement negotiations. In October 2008, Progressive made an offer to Kern with Dr. Segal's report attached. Kern's attorney wrote a letter in

response giving the attorney's negative opinion of Segal's findings, and asked Progressive to re-evaluate the claim. Kern later sought to admit this letter into evidence at trial.

[¶7.] Progressive's last settlement offer prior to the lawsuit was for $12,500 over and above the $25,000 Kern had already received. Kern rejected this amount and filed this suit in July 2009. Negotiations continued during the litigation process, but no amount was ever agreed upon. A few weeks prior to trial, Progressive offered $45,000 in UIM benefits, but Kern rejected this amount and the parties proceeded to trial.

[¶8.] Before the jury trial, Kern attempted to subpoena John Charles Jones, the top manager of Progressive's gainsharing program. Kern also attempted to subpoena Scott Krank, the claims manager for both Sedevie and Hoime, whose office was located in North Dakota. Progressive filed a motion to quash the subpoenas, arguing that the trial court had no personal jurisdiction over the two employees. The trial court agreed and quashed the subpoenas.

[¶9.] Prior to trial, Kern also filed a notice of intent to use other acts evidence. Kern argued that Sedevie and Hoime were involved in another Progressive case involving bad faith, *Bjornestad v. Progressive N. Ins. Co.*, No. CIV 08-4105, 2010 WL 4687640, at *3 (D.S.D. Nov. 10, 2010), *aff'd,* 664 F.3d 1195 (8th Cir. 2011). In that case, the jury did not find bad faith, but the trial judge awarded attorney's fees because Progressive's behavior was vexatious and without reasonable cause under SDCL 58-12-3. The trial court denied the motion to include

this other acts evidence, and denied Kern's renewed motion when the issue came up during trial.

[¶10.] The jury trial took place in March 2015. Kern's trial theory was that Progressive acted in bad faith by deliberately "low-balling" Kern's claim. Kern argued that there were inconsistencies in Progressive's claim management process, alleging that some of Progressive's settlement offers were less than their internal valuation of the claim. When Kern confronted Progressive about these alleged inconsistences, Sedevie answered that mistakes had been made in the claims process. Sedevie's supervisor Hoime also admitted that mistakes were made during the process. Despite this testimony, the trial court found post-trial that no credible evidence had been presented indicating that Progressive ever attempted to negotiate a settlement for any amount less than its own internal evaluation range for Kern's claim.

[¶11.] After Kern presented his case, he moved for judgment as a matter of law regarding his bad faith claim, which the court denied. The case was submitted to the jury. The jury found that Progressive had not acted in bad faith, but did award Kern gross damages of $43,649.97. The jury's verdict was in the form of a special verdict form, which instructed them to subtract $25,000 from their calculated total of damages, if they found any. Thus, Kern's final award was $18,649.97 in unpaid UIM damages.

[¶12.] After the verdict was handed down, Kern renewed his motion for judgment as a matter of law and moved for attorney's fees under SDCL 58-12-3. A hearing was held in June 2015. After issuing findings of fact and conclusions of

law, the court denied both motions. The court found that Kern failed to meet his burden proving that Progressive's negotiations were vexatious or without reasonable cause as required under the statute.

[¶13.]    Kern now appeals, arguing six issues:

1. Whether the trial court abused its discretion when it issued the verdict form instructing the jury to subtract $25,000 from Kern's total damages.

2. Whether the trial court abused its discretion by excluding the letter from Kern's counsel in response to Dr. Segal's report.

3. Whether the trial court abused its discretion by excluding Kern's proposed other acts evidence.

4. Whether the trial court abused its discretion by quashing the trial subpoenas of John Charles Jones and Scott Krank.

5. Whether the trial court erred in refusing to award attorney fees under SDCL 58-12-3.

6. Whether the trial court erred by refusing to grant Kern's motion for judgment as a matter of law or a new trial.

### Analysis

[¶14.]    *1.    Whether the trial court abused its discretion when it issued the verdict form instructing the jury to subtract $25,000 from Kern's total damages.*

[¶15.]    The trial court used a special verdict form to assist the jury in rendering its verdict. Special verdict forms are useful when dealing with complex causes of action. *Zahn v. Musick*, 2000 S.D. 26, ¶ 41, 605 N.W.2d 823, 831. Use of such a form is within the trial court's discretion, and we will not disturb its decision absent an abuse of that discretion. *Id.* at ¶ 40, 605 N.W.2d at 831.

[¶16.]    Kern argues that because he only received $20,000 from Geico, only that amount should have been deducted from the total award. Because the tortfeasor's policy limit was $25,000, Kern argues that he was entitled to that entire

amount from Geico.  Kern alleges Geico wrongfully paid $5,000 in subrogation to Progressive to compensate for the medical payments coverage Progressive had already disbursed.

[¶17.]     Kern's argument is unpersuasive.  Whether he was entitled to $25,000 from Geico is irrelevant, because the jury's purpose in the verdict form was to determine what damages were owed to Kern by Progressive over and above what he had already received.  The jury calculated his total damages, and then subtracted previously received compensation.  It is undisputed that Kern received $5,000 in medical payments coverage from Progressive, and that amount was properly subtracted from his final damages total.  *See Diggs v. Tillman*, 985 So. 2d 767, 770 (La. Ct. App. 2008) ("[I]t is a well-settled rule that the UM carrier is entitled to a credit for any amount which it has paid to the plaintiff under the medical payments coverage."); 12 *Couch on Insurance* 3d § 171:44 (2016) ("[T]he insurer can generally setoff from the UM/UIM coverage the amounts paid to the insured under the medical expenses provision on the basis that it prevents a 'double recovery' by the insured.").  The trial court did not abuse its discretion by submitting to the jury the verdict form that subtracted $25,000 from Kern's total damages.

[¶18.]     2.     *Whether the trial court abused its discretion by excluding the letter from Kern's counsel in response to Dr. Segal's report.*

[¶19.]     After Dr. Segal completed his report of Kern's injuries and the report was shared with Kern's trial counsel, Kern's trial counsel drafted a letter to Progressive contesting some of Dr. Segal's medical conclusions.  Kern argues that Progressive did not address his trial counsel's objections in the letter, and the refusal to acknowledge these objections was evidence of bad faith.  Kern argues that

the letter was not intended to be introduced as substantive evidence and thus his trial counsel would not have been testifying.

[¶20.]	Regardless of whether Kern intended the letter to show Progressive's bad faith or as substantive evidence contesting Dr. Segal's report, it was still a letter written by Kern's trial counsel containing trial counsel's opinions. Attorneys cannot participate in a trial after they have testified as witnesses in that trial. SDCL 19-1-3. Additionally, the South Dakota Rules of Professional Conduct prohibit an attorney from acting as both an advocate and a witness in a case with exceptions that would not have applied here. South Dakota Rule of Professional Conduct 3.7. It would have been exceedingly difficult for the jury to view the letter only as evidence of Progressive's bad faith in not responding and not as substantive evidence of any deficiencies in Dr. Segal's opinion.

[¶21.]	It is also unlikely that Kern was prejudiced by the exclusion of the letter. Kern's putative goal in introducing the letter was to highlight to the jury that Progressive did not respond to his objections to Dr. Segal's report and this showed bad faith on Progressive's part. Kern elicited this information explicitly during the direct examination of Sedevie. Admitting the letter would not have added any substantial relevant information, and its inclusion would have amounted to Kern's trial counsel giving testimony. The trial court did not abuse its discretion by excluding the letter.

[¶22.]	*3.	Whether the trial court abused its discretion by excluding Kern's proposed other acts evidence.*

[¶23.]	Prior to trial, Kern sought to introduce the facts from *Bjornestad v. Progressive N. Ins. Co.*, a bad faith case involving both Sedevie and his supervisor

Hoime. 2010 WL 4687640, at *3 (D.S.D. Nov. 10, 2010). In that case, after the jury found that Progressive did not act in bad faith, the plaintiff moved for attorney's fees. *Id.* The trial judge found that Progressive had intentionally made settlement offers below its internal valuation of the claim and that Progressive was dishonest with the plaintiff's doctor. *Id.* The trial judge found that Progressive's behavior was vexatious and without reasonable cause and awarded attorney's fees under SDCL 58-12-3. *Id.*

[¶24.] The trial court in this case denied Kern's pre-trial motion to include the facts from *Bjornestad*, stating the issue could be brought up again at trial if necessary. During trial, Kern sought to introduce these prior acts to show absence of mistake after Sedevie admitted mistakes occurred in their investigation. The trial court denied his motion.

[¶25.] SDCL 19-19-404(b) prohibits the use of evidence of a past act to prove a person's character. This evidence can be admitted to show absence of mistake or lack of accident. SDCL 19-19-404(b)(2); *see State v. Jolley*, 2003 S.D. 5, ¶ 22, 656 N.W.2d 305, 310. However, the evidence should still be excluded if another rule of evidence requires it. If the evidence's probative value is substantially outweighed by the potential waste of time, the trial court is correct to exclude it. SDCL 19-19-403.

[¶26.] In this case, the trial court was correct to exclude the evidence because the potential for confusion and waste of time substantially outweighed the evidence's limited probative value. Kern sought to introduce the evidence to show

that Progressive's actions were not mistakes and that its conduct was in bad faith. However, the jury explicitly did not find bad faith in *Bjornestad,* thus limiting that case's applicability to Kern's situation. *See Tripp v. W. Nat. Mut. Ins. Co.*, 664 F.3d 1200, 1205 (8th Cir. 2011) (holding that "where a jury finds in favor of an isured on a tort claim of bad faith, South Dakota law requires a seperate analysis to determine whether an insurer's refusal o pay is vexatious or without reasonable cause under § 58-12-3."*see also Isaac v. State Farm Mut. Auto. Ins. Co.,* 522 N.W.2d 752, 763 (S.D. 1994) ("[A] finding of bad faith on the part of an insurance company does not mean 'ipso facto' that its conduct was vexatious or without reasonable cause [under SDCL 58-12-3]."); *Crabb v. Nat'l Indem. Co.,* 87 S.D. 222, 205 N.W.2d 633, 639 (1973) (indicating a finding "that an insurer lacked good faith does not signify [the insurer's] conduct was 'vexatious or without reasonable cause', as a matter of law").

[¶27.] In addition to the limited probative value, the *Bjornestad* facts would have inevitably led Progressive to counter with facts from other cases where its behavior was not found to be improper, leading to each case being effectively retried. This would have greatly lengthened and muddled an already long and confusing case, and would not have aided the jury in its decision. *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 745 F. Supp. 2d 1380, 1385 (S.D. Fla. 2010) (holding that any probative value from an insurer's conduct in prior claims would be substantially outweighed by the prejudice of having to re-try many other cases in one trial). The trial court did not abuse its discretion by excluding the facts from the *Bjornestad* case.

[¶28.]     *4.    Whether the trial court abused its discretion by quashing the trial subpoenas of John Charles Jones and Scott Krank.*

[¶29.]     While this Court has never directly addressed the standard of review of a trial court's decision to quash a subpoena, we have previously analyzed a trial court's quash of a subpoena as a discovery or evidentiary issue and thus reviewed it for an abuse of discretion. *See Lien v. Lien*, 2004 S.D. 8, ¶ 33, 674 N.W.2d 816, 826-27; *Phipps Bros. Inc. v. Nelson's Oil & Gas, Inc.*, 508 N.W.2d 885, 890 (S.D. 1993) ("We have held that a party seeking to modify or quash such a subpoena has the burden of proving the necessity of doing so . . . . We generally recognize that the trial court should be allowed considerable discretion on its evidentiary rulings.") (citation omitted); *see also Mitzel v. Emp'rs Ins. of Wausau*, 878 F.2d 233, 235 (8th Cir. 1989) (affirming the federal district court's quash of a subpoena under South Dakota law "[b]ecause no abuse of discretion has been shown").

[¶30.]     Krank and Jones were not parties to this case. They are Progressive employees, but are not its registered agents. They do not live in South Dakota, and do not work in South Dakota. The trial court would not have been able to exert personal jurisdiction over the individuals. Kern attempts to overcome this by arguing that SDCL 58-6-39 compels any insurance company doing business in South Dakota to designate the director of the Division of Insurance as its attorney for service of legal process. SDCL 58-6-39. However, this statute applies to "insurers" not employees of insurers, as the individuals are. As the statute is inapplicable, the trial court would have been without power to compel the individuals to appear in court, and properly quashed the subpoena.

[¶31.]      *5.      Whether the trial court erred in refusing to award attorney fees under SDCL 58-12-3.*

[¶32.]      In order to be awarded attorney's fees under this statute, a court must find that an insurer's denial of coverage was vexatious or without reasonable cause. SDCL 58-12-3; *Brooks v. Milbank Ins. Co.*, 2000 S.D. 16, ¶ 17, 605 N.W.2d 173, 178. The court's decision of whether the insurer's conduct was vexatious or without reasonable cause is a finding of fact and thus will not be reversed unless the decision was clearly erroneous. *Sawyer v. Farm Bureau Mut. Ins. Co.*, 2000 S.D. 144, ¶ 29, 619 N.W.2d 644, 652.

[¶33.]      The facts of this case are complicated, and the trial judge had the benefit of observing the trial's many subtleties. In light of this, and upon looking at the entire record, it cannot be said that the trial judge's finding that Progressive did not act without reason was clearly erroneous. Progressive never denied that Kern was entitled to UIM coverage. It never claimed that Kern was at fault in the accident. A few weeks prior to trial, Progressive offered to settle the case for $45,000 in UIM benefits, a higher amount than what the jury determined his actual damages to have been. In light of these factors, the trial judge's determination that Progressive's conduct was not vexatious was not clearly erroneous.

[¶34.]      *6.      Whether the trial court erred by refusing to grant Kern's motion for judgment as a matter of law or a new trial.*

[¶35.]      Kern supports this argument by restating the arguments in his other issues. He does not present any new arguments or authority to support his theory that the trial court should have granted him a new trial or judgment as a matter of

law. As such, the argument is waived. *Longwell v. Custom Benefit Programs Midwest, Inc.*, 2001 S.D. 60, ¶ 30, 627 N.W.2d 396, 401.

## Conclusion

[¶36.]     Kern's alleged errors do not merit reversal. The trial court did not abuse its discretion regarding the verdict form or its evidentiary rulings, when it quashed the subpoenas of Krank and Jones, or when it refused to order a new trial. The trial court also did not clearly err by refusing to award attorney's fees. We affirm.

[¶37.]     ZINTER, SEVERSON and WILBUR, Justices, and KONENKAMP, Retired Justice, concur.

[¶38.]     KONENKAMP, Retired Justice, sitting for KERN, Justice, disqualified.